USCA1 Opinion

 

 March 29, 1994 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1663 UNITED STATES, Appellee, v. JAIME CORRALES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Lenore Glaser for appellant. _____________ R. Bradford Bailey, Assistant United States Attorney, with whom ___________________ A. John Pappalardo, United States Attorney, was on brief for appellee. __________________ ____________________ ____________________ Per curiam. After a five-day jury trial, ___________ defendant-appellant Jaime Corrales was convicted of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1)(2). On appeal, defendant argues that the district court erroneously limited the scope of his cross-examination of the government's confidential informant and asks us to vacate his conviction. We affirm. I. I. __ BACKGROUND BACKGROUND __________ Before beginning work as a confidential informant with the federal Drug Enforcement Administration ("DEA"), Jaime Echevarria was arrested on two separate occasions: in 1990 for drug trafficking and in 1991 as part of a federal drug conspiracy sting. Both times, the charges against Echevarria were dismissed. In particular, the 1991 charges were dismissed after a finding of no probable cause by a United States Magistrate Judge.1 Echevarria's wife, Beatrice Lopez, was also arrested in the 1991 sting. Her indictment was not dismissed, however, and she subsequently pleaded guilty to a charge of conspiracy to possess with intent to distribute cocaine. ____________________ 1. The record before us provides no further elaboration on the grounds for dismissal. -2- 2 Some days after Echevarria's 1991 charges were dismissed, he was approached by DEA agents offering financial compensation and a promise to consider reducing Lopez's sentence in exchange for Echevarria's work as a confidential informant. Echevarria agreed. In his first assignment, Echevarria posed as a drug buyer in Lowell, Massachusetts, where he negotiated to buy ten kilograms of cocaine from defendant and two others. As a result of Echevarria's cooperation, defendant was arrested and brought to trial. Echevarria was the government's principal witness at trial. Prior to defendant's cross-examination of Echevarria, the government, in accordance with the Jencks ______ Act2, provided defendant with a summary of Echevarria's ___ criminal history and all inducements. At this time, the government also sought, through a motion in limine, to __ ______ prevent defendant from asking Echevarria about his prior unprosecuted arrests. Before the trial court ruled on the motion, defendant's attorney stated to the court that she would not ask Echevarria about unprosecuted arrests provided that the government's decision not to prosecute was not the product of an agreement to cooperate. At this time, the government reiterated the information contained in the Jencks ______ Act materials by assuring both defense counsel and the ___ ____________________ 2. See 18 U.S.C. 3500 et seq.; Jencks v. United States, ___ ______ _____________ 353 U.S. 657 (1957). -3- 3 district court that the dismissal of the 1991 charges against Echevarria resulted from a lack of probable cause and not ___ from any such agreement. Nonetheless, before cross-examining Echevarria, Corrales requested (and was granted) a voir dire of the witness. In response to counsel's questions, Echevarria emphatically denied any collusion between the government and himself regarding the 1991 dismissal. Echevarria further stated that he had not been approached by DEA agents concerning his possible cooperation until days after the charges were dropped. At the conclusion of the voir dire, the government again declared that the dismissal of the 1991 charges against Echevarria resulted from a finding of no probable cause by a Magistrate Judge. Following voir dire, defendant's counsel cross- examined Echevarria about the circumstances leading to his wife's indictment. After denying knowledge of specific events, Echevarria explained that he was not aware of his wife's actions because he was "innocent of [her crime]." Counsel then attempted to impeach this proclamation of innocence by questioning Echevarria in detail about the substance of a phone call between Lopez and her cousin -- evidence which apparently served as the basis for Echevarria's wife's indictment. The government objected and the following bench conference ensued: -4- 4 [Defense Counsel]: I think I am entitled to ask him about his activities around drugs and his information and his knowledge, and it is an exception to the conviction; because, your Honor, I am not introducing it for the purpose of bad character, which is why only convictions are allowed. Court: You are trying to establish -- [Defense Counsel]: He himself was involved. Court: If you can establish he was involved, that is something else again. [Defense Counsel]: I believe I am entitled to that, because, although he was not convicted of a drug crime, it is not being offered for purposes of proving his bad character, which is what the hearsay rule is for. Court: What is the relevance then? [Defense Counsel]: The relevance is it shows a motive for him. Court: His motive may be to protect his wife. You can establish that, but on the record he has already been dismissed from any accusation, and that controls. You don't have a good-faith basis for trying to ask the question so he will scream out, "I recall. I made a mistake." There is no good-faith basis for that. You are entitled, I think, to establish the severity of the offense against the wife and his interest in trying to cooperate. That is legitimate. Without further discussion, defense counsel resumed her cross-examination of Echevarria. She neither attempted to present to the court any evidence suggesting that the 1991 dismissal was tied to an agreement between Echevarria and the -5- 5 government, nor did she attempt to suggest that she possessed evidence to show that Echevarria had been involved in the 1991 conspiracy. Instead, counsel concentrated on eliciting the exact terms of Echevarria's agreement with the government and wholly abandoned any attempt to ask about his alleged involvement in his wife's crime. In response to defense counsel's questions, Echevarria acknowledged that he had been paid $10,800 in cash for his cooperation in the case and further admitted that he hoped his cooperation would inure to the benefit of his wife who had been convicted of a drug- related crime and was awaiting sentencing. II. II. ___ DISCUSSION DISCUSSION __________ Defendant contends that the district court violated his Sixth Amendment right to confrontation by limiting defense counsel's cross-examination of Echevarria. More specifically, defendant claims that the district court's evidentiary ruling prevented his attorney from fully exposing Echevarria's motive to testify, and from impeaching Echevarria on the collateral issue of his involvement in his wife's 1991 drug activities. We begin by noting that a defendant's Sixth Amendment right to cross-examine witnesses against him or her is "fundamental and demanding of great respect," United ______ States v. Twomey, 806 F.2d 1136, 1139 (1st Cir. 1986). This ______ ______ -6- 6 right, however, is not without limits. "`On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" United States v. Carty, 993 F.2d _____________ _____ 1005, 1009-10 (1st Cir. 1993) (quoting Delaware v. Van ________ ___ Arsdall, 475 U.S. 673, 679 (1986)). On appeal, we review a _______ trial court's limitations upon cross-examination under an abuse of discretion standard. See Twomey, 806 F.2d at 1140. ___ ______ "In order to establish that the trial judge abused his discretion in limiting cross-examination, the defendant must show that the restriction imposed were clearly prejudicial." Id. Defendant makes no such showing. ___ A review of the record reveals that Echevarria's motives for testifying were fully disclosed. As noted above, during cross-examination of Echevarria, defense counsel unearthed the exact terms of the agreement between Echevarria and the government. Thus, the jury was afforded sufficient information to make a discriminating appraisal of Echevarria's motives and bias. See id.; United States v. ___ ___ ______________ McLaughlin, 957 F.2d 12, 17 (1st Cir. 1992). In the absence __________ of any evidence to suggest that there were additional agreements made between Echevarria and the government, we -7- 7 disagree with defendant's assertion that he was denied an opportunity to fully expose Echevarria's motivation to testify. Defendant's argument that the district court improperly limited cross-examination regarding Echevarria's involvement in the 1991 drug conspiracy is equally unpersuasive. Trial judges may "limit impeachment evidence on matters that are deemed collateral or irrelevant." United ______ States v. Walker, 930 F.2d 789, 791-92 (10th Cir. 1991); see _________________ ___ also United States v. Moore, 923 U.S. 910, 913 (1st Cir. ____ _____________ _____ 1991) (stating that the district court "has broad discretionary authority to prohibit cross-examination where that cross-examination would introduce into the case collateral matters that could confuse the jury, that would require later introduction of otherwise unnecessary, additional, potentially clarifying evidence, or that might prejudice one of the parties"). As the trial court aptly noted, the only evidence remotely suggesting that Echevarria had been involved in the 1991 conspiracy was his 1991 unprosecuted arrest. Yet, charges from this arrest were dismissed for lack of probable cause. Moreover, defendant failed below, and has failed on appeal, to proffer any additional evidence of Echevarria's involvement in the 1991 conspiracy. Without such a proffer, the district court acted well within its discretion to hold that defendant was bound -8- 8 by Echevarria's proclamation of "innocence," and could not further question Echevarria about this collateral matter without demonstrating a good faith basis for the inquiry.3 Finally, defendant appears to argue, albeit in a perfunctory manner, that, under Fed. R. Evid. 608(b), evidence of Echevarria's prior drug involvement should not have been excluded because it was relevant to Echevarria's character for truthfulness. We need not delay long on this _________ complaint. As we noted in Pinkham v. Maine Cent. R.R. Co., _______ _____________________ 874 F.2d 875, 879 (1st Cir. 1989) (collecting cases), evidence of a witness's drug involvement is generally not admissible for character impeachment purposes. Accordingly, we see no error here. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the judgment below is ____________________ 3. Defendant alternatively argues that, under Fed. R. Evid. 404(b), the evidence of prior drug involvement should not have been excluded. Without reaching defendant's dubious and unsupported assertion that Fed. R. Evid. 404(b) is relevant to a discussion of impeachment of a government witness, we _______ note that "other act" evidence "must have some `special relevance' to a material issue such as motive, opportunity, ________ intent, preparation, plan, or knowledge." Carty, 993 F.2d at _____ 1011 (emphasis supplied). Admission of other act evidence under Fed. R. Evid. 404(b) "is committed to the sound discretion of the district court, and we review its ruling only for abuse of discretion." Id. Not only has defendant ___ failed to demonstrate a good faith basis for questioning Echevarria about prior drug involvement, he has not shown that this nonexistent evidence bears some special relevance to a material issue in the case. -9- 9 Affirmed. Affirmed. _________ -10- 10